Vanessa L. ROBINSON, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A01–0804–CR–178.

Court of Appeals of Indiana.

Oct. 15, 2008.

Lisa A. Moody, Princeton, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Vanessa L. Robinson (Robinson), appeals her conviction and sentence for neglect of a dependent, as a Class A felony, Ind.Code § 35–46–1–4(b)(3).

We affirm.

### ISSUES

Robinson raises two issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence to prove beyond a reasonable doubt that she committed neglect of a dependent, as a Class A felony.

(2) Whether the trial court properly sentenced Robinson.

### FACTS AND PROCEDURAL HISTORY

On March 12, 2007, Robinson was living in her mother's house in the Town of Patoka, Indiana. That day she gave birth to a four pound, sixteen and one-half inch baby boy in the basement of her house, and then wrapped the baby in a towel and hid it in a box. Two days later, she was experiencing excessive bleeding and foul odor from her vaginal area, and her mother took her to the office of Dr. Andrew Wyant (Dr. Wyant) for a medical examination. Prior to being examined, Robinson denied being pregnant or having been pregnant when giving her medical history. During the examination, Dr. Wyant noticed whitish

grey tissue in Robinson's uterus and asked her if she had been pregnant and had miscarried. Robinson said, "she wasn't pregnant and hadn't miscarried and had just been bleeding." (Transcript p. 563). Dr. Wyant determined that Robinson was going into septic shock from an infection in her vaginal area and ordered her to go to the hospital immediately, where he performed a surgery to clean out the infection. During the surgery, he removed from her what he believed to be a full term placenta and umbilical cord. Dr. Wyant consulted with a pathologist to confirm that what he had removed from Robinson was a normal placenta, not the result of an abnormal pregnancy, and again questioned Robinson. Robinson still denied having been pregnant. Dr. Wyant then consulted with a senior physician and decided to contact authorities.

Detective William W. George (Det.George) of the Indiana State Police was the first detective to investigate the situation. He met with Robinson while she was still in the hospital recovering from her infection. Robinson told Det. George that she might have had a miscarriage while sitting on the toilet on March 12, 2007. Robinson said that she had discharged "a lot of black blood" into the toilet that day and that her mother, Viki Benjamin (Benjamin), had checked to see if there was a baby in the toilet, but found none. (Tr. p. 386).

Det. George then went to Benjamin's home and spoke with her. Benjamin said that she had never suspected that Robinson was pregnant, and had never checked the toilet to see if a baby was inside. Benjamin also told Det. George that there was no baby inside the house because Robinson was never pregnant. After this brief conversation, Det. George left the house. Benjamin called Robinson at the hospital to ask, "What's going on?" (Tr. p. 429).

A friend of Robinson's got on the phone, and that is when Robinson admitted that there was a baby in the basement. Benjamin called the State Police, who then called Det. George. Det. George returned to the house and made a call to obtain a search warrant. During a search of the house, with crime scene technician James Dotson and Coroner Rick Hickrod, a towel was discovered in a box in the basement. Dotson unwrapped the towel and found a dead infant.

An autopsy of the infant revealed that it had methamphetamine and cotinine in his blood system. However, Dr. Mark LeVaughn, the forensic pathologist who performed the autopsy, was unable to develop a conclusion as to the cause of death and could not say with certainty that the baby had been born alive, although he believed it was likely. Dr. Mary Davis, a pediatric pathologist, conducted an investigation and determined from several factors—including the presence of air in the baby's lungs and stomach, the final resting position of the baby's body, and hemorrhaging around the baby's mouth and in its lungs, thymus, and brain—that the baby had been alive for a minimum of six hours after birth.

On January 25, 2008, the State filed an Information charging Robinson with murder and neglect of a dependent, as a Class A felony. On January 31, 2008, the State filed an amended information adding to the charge of murder the alternative allegation that Robinson did knowingly or intentionally kill a fetus that had attained viability. On February 5, 2008, the State filed another amended Information charging Robinson with two separate Counts of murder, one for killing a newborn and another for killing a fetus having attained viability, and neglect of a dependent, as Class A felony.

On February 11, 2008, a jury trial began. During the trial, Robinson introduced the expert testimony of Dr. John

Pless to rebut the testimony from the State's expert witnesses, wherein he concluded that there was not enough evidence to conclude that the child was either alive or dead when it was born.

On February 14, 2008, the trial concluded, and after deliberations, the jury returned a verdict of not guilty on both Counts of murder, but guilty of neglect of a dependent, as a Class A felony. On March 5, 2008, the trial court held a sentencing hearing. The trial court found as aggravating the fact that Robinson essentially treated the baby as a piece of trash by placing it in an empty beer box in the basement of her home, that Robinson was in a position of having care, custody, or control of the victim of the offense, and that, although Robinson had never been convicted of a crime, she had used methamphetamine one day prior to the birth and subsequent death of the baby. The trial court found the fact that Robinson had never been convicted of a crime to be mitigating, and discussed the difficulty of applying other possible mitigating factors, but did not conclusively state it was applying any mitigating weight based on those factors. Based on these considerations, the trial court sentenced Robinson to the advisory sentence of thirty years in the Department of Correction.

Robinson now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION[1]

#### I. *Sufficiency of the Evidence*

■ Robinson argues that there was insufficient evidence to support her conviction for neglect of a dependent beyond a reasonable doubt. Primarily, Robinson argues that for the trial court to convict her of neglect of a dependent, as a Class A felony, the State was required to prove beyond a reasonable doubt that the baby was born alive, which she contends the State did not accomplish.

Our standard of review with regard to sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 213 (Ind. Ct.App.2007), *trans. denied.* We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

Indiana Code section 35–46–1–4 states in pertinent part that:

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that endangers the dependent's life or health;

(2) abandons or cruelly confines the dependent;

(3) deprives the dependent of necessary support; or

(4) deprives the dependent of education as required by law; commits neglect of a dependent, a Class D felony.

\* \* \* \*

(b) However, the offense is:

---

1. We remind Robinson's counsel that the appendices should contain only "brief portions of the Transcript that are important to a consideration of the issues raised on appeal." Ind. Appellate Rule 50(B)(1)(d).

\* \* \* \*

(3) a Class A felony if it is committed ... by a person at least eighteen (18) years of age and results in the death of a dependent who is less than fourteen (14) years of age....

In *Herron v. State*, 729 N.E.2d 1008, 1010 (Ind.Ct.App.2008), *trans. denied*, we held that the definition of "dependent," as used in this statute, does not include an unborn child. Therefore, Robinson is correct when she argues, that for her conviction to be sustained, the State must have proved beyond a reasonable doubt that her baby was alive when it was born.

From our review of the record, we find evidence which is favorable to a conclusion that Robinson's baby was born alive: Dr. LeVaughn's conclusion that the baby was likely alive when born, Dr. Davis' conclusion that the baby was alive for a minimum of six hours after birth, and all of the evidence relied upon by these experts. Considering only this evidence, as our standard of review requires, we conclude that there is sufficient evidence to support the jury's finding that Robinson's baby was alive when she gave birth. And because we have concluded that there is sufficient evidence to support the jury's finding that the baby was alive when born, the evidence that Robinson did not seek any medical attention for the baby, but rather wrapped it in a towel and stuffed it in a box and denied its existence, is sufficient evidence to support her conviction for neglect of a dependent, as a Class A felony.

## II. *Sentencing*

### A. *Standard of Review*

■■■ Our supreme court clarified a defendant's right to appellate review of a trial court's sentencing decision by stating, "[s]o long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." *Anglemyer v.*

*State*, 868 N.E.2d 482, 490 (Ind.2007), *aff'd on reh'g*. An abuse of discretion occurs if we find the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Payne v. State* 854 N.E.2d 7, 13 (Ind.Ct.App.2006). The trial court no longer has any obligation to weigh aggravating and mitigating factors, and therefore cannot be said to have abused its discretion in failing to properly weigh those factors. I.C. § 35–38–1–7.1(d); *see also Anglemyer*, 868 N.E.2d at 491. However, if the trial court includes a finding of aggravating or mitigating circumstances in its recitation of its reasons for imposing a particular sentence, then a sentencing statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be aggravating or mitigating. *Anglemyer*, 868 N.E.2d at 490. One way in which a trial court may abuse its sentencing discretion is by applying aggravating factors that are improper as a matter of law. *Id.* at 490–491.

Additionally, we have the authority to review the appropriateness of a sentence authorized by statute through Appellate Rule 7(B). That rule permits us to revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Anglemyer*, 868 N.E.2d at 491.

### B. *Position of Care*

■■ Robinson contends that the trial court improperly used the fact that she was in a position of having care, custody, or control of the victim as an aggravating factor, because that fact is an element the crime of neglect of a dependent. It is true that the trial court stated that it was using the fact that Robinson had the care, custody, and control of the victim as an aggravating factor, which is one of the statutori-

ly-listed sentencing considerations. I.C. § 35–38–1–7.1(a)(8). And, as Robinson points out in her brief, having care of the victim is an element of the offense neglect of a dependent. I.C. § 35–46–1–4. However, we disagree with Robinson's contention because the trial court did not merely rely on an element of the crime as aggravating factor.

■ It is proper for trial courts to consider the particularized individual circumstances of the crime as an aggravating factor. *See, e.g., Townsend v. State*, 498 N.E.2d 1198, 1201 (Ind.1986). Here, the trial court explained its reliance upon Robinson's position of care over the newborn baby by stating:

> It isn't simply a question of the victim being under the age of 12 as noted by the statute. We're talking about a victim here, your newborn son, who was completely defenseless, who had to depend upon you. It had absolutely nowhere else to turn. So it isn't simply a question of being under 12. We're talking about a victim who is as vulnerable as a human being can be. So the [c]ourt believes that also merits consideration in sentencing.

> \* \* \* \*

> That also, of course, ties into that other aggravating factor that the State did mention that is, that you had the care, custody, and control of the victim, as I indicated, a victim who is completely defenseless, who necessarily depended upon you and the decisions you would make.[2]

Reviewing the trial court's articulation of why it was applying the aggravating factor that Robinson's victim was in her care in its entirety, it is clear that the trial court was addressing the particularized individual circumstances that the newborn was more vulnerable than other potential victims protected by the neglect of a dependent statute. This is an appropriate consideration of the particularized individual circumstances of Robinson's crime. Therefore, we conclude that the trial court did not abuse its discretion when considering Robinson's position of care as an aggravating factor.

### C. *Robinson's Age*

■ Robinson also states that the trial court failed to consider her age as a mitigating factor. However, as the State points out, Robinson never advanced Robinson's age for consideration as a mitigating factor. Therefore, we cannot say that the trial court abused its discretion by failing to consider Robinson's age as a mitigating factor.

### D. *Appropriateness of Robinson's Sentence*

■ Finally, Robinson argues that her sentence is inappropriate when the nature of her crime and her character are considered. Specifically, she contends that she is a "young woman with no prior criminal history, whose crime consists of omissions of a nonviolent nature and her sentence of thirty years imposed by the trial court is inappropriate." (Appellant's Br. p. 18). We disagree.

First, we note that the sentence imposed by the trial court, thirty years, is the advisory sentence for Robinson's crime, neglect of a dependent, as a Class A felony. *See* I.C. § 35–50–2–4. As for the nature of

---

**2.** The trial court misstated the ceiling for the age of victims for the crime neglect of a dependent, as a Class A felony. *See* I.C. § 35–46–1–4(b)(3). However, this error does not detract from the trial court's sound rationale that newborn babies are more dependent on care than other potential victims of that crime, and therefore more vulnerable.

the offense, Robison seems to be arguing that because she did not violently kill the child, but instead just let it die, she is deserving of less than the advisory sentence for her crime. However, it is apparent that the jury already took this fact into consideration by convicting Robinson of neglect of a dependent instead of murder. And as for the character of the offender, Robinson is correct that she had not been convicted of any crime previously. However, through the facts brought out at trial, we know that she had used illegal drugs while pregnant before, and for that reason had a child taken from her. Likewise, she used methamphetamines while pregnant with the child that she let die. Altogether, we cannot say that Robinson's sentence is inappropriate when the nature of her offense and her character are considered.

### CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Robinson committed neglect of a dependent, as a Class A felony. We also conclude that the trial court did not abuse its discretion when sentencing Robinson, and her sentence is not inappropriate.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.